UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAMON SANTIAGO RODRIGUEZ,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL,<br><br>　　　　　　　　　　Defendant. | Case No.: 16-cv-2718 WQH (JLB)<br><br>**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>[ECF Nos. 16, 17] |

This matter is before the Court on cross-motions for summary judgment. (ECF Nos. 16, 17.) Plaintiff Ramon Santiago Rodriguez moves under 42 U.S.C. § 405(g)[1] of the Social Security Act for judicial review of the Commissioner of Social Security Nancy A. Berryhill's final decision denying his application for disability insurance benefits under Title II of the Social Security Act.

---

[1] Section 405(g) states, "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . brought in the district court of the United States . . . . The court shall have the power to enter, upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g) (2015).

This Report and Recommendation is submitted to United States District Judge William Q. Hayes pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the Local Rules of Practice for the United States District Court for the Southern District of California. After careful review of the moving and opposing papers, the administrative record, the facts, and the applicable law, for the reasons set forth below, the Court hereby **RECOMMENDS** that Plaintiff's motion for summary judgment (ECF No. 16) be **DENIED** and the Commissioner's cross-motion for summary judgment affirming the Administrative Law Judge's decision (ECF No. 17) be **GRANTED**.

## I. BACKGROUND

Plaintiff filed an application for a period of disability and disability insurance benefits on September 24, 2012, alleging his disability commenced on June 6, 2011.[2] (A.R. 145–51.) Plaintiff alleges that he is unable to perform any work activity because he suffers from paranoia, suspiciousness of others, isolative behaviors, depression, anxiety, panic attacks, mood swings, racing thoughts, and auditory and visual hallucinations. (A.R. 20.) Plaintiff initially received some mental health treatment from physicians in Puerto Rico, then moved to the United States in 2013 and began receiving treatment from psychiatrist Rachel Ross, M.D. (A.R. 20–21.) Dr. Ross diagnosed Plaintiff with major depressive disorder with psychotic features and a panic disorder. (A.R. 326.)

The Commissioner denied Plaintiff's claims by initial determination on April 2, 2013. (A.R. 57–70, 84–87.) Plaintiff requested reconsideration of the initial determination on May 13, 2013. (A.R. 88.) The Commissioner denied reconsideration on October 28, 2013. (A.R. 72–83, 91–94.) Plaintiff requested a *de novo* hearing before an Administrative Law Judge ("ALJ") on November 21, 2013. (A.R. 97–98.) The Commissioner granted this request and appointed ALJ Jay E. Levine to preside over the matter. (A.R. 117–36.) On November 3, 2014, Plaintiff, his attorney, and a vocational expert appeared before ALJ

---

[2] *See* 42 U.S.C. § 423 (Disability insurance benefit payments); *see also id.* at §§ 416(i) (defining "period of disability"), 423(d)(1) (defining "disability" for purposes of entitlement to a period of disability or to disability insurance benefits).

Levine. (A.R. 29–55.) In a decision dated February 19, 2015, the ALJ issued an unfavorable decision and found Plaintiff was not disabled from June 6, 2011, the alleged disability onset date, through December 31, 2014, the last date insured. (A.R. 13–28.)

On September 6, 2016, the Social Security Administration Appeals Council denied Plaintiff's request for review of the ALJ's unfavorable decision (A.R. 1–4), making the ALJ's decision the final decision of the Commissioner.[3] Plaintiff then commenced this instant action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. LEGAL STANDARDS

### A. Determination of Disability

To qualify for disability benefits under the Social Security Act, a claimant must show two things: (1) that he suffers from a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the claimant incapable of performing the work he previously performed, or any other substantial gainful employment which exists in the national economy.[4] A claimant must meet both requirements to be classified as disabled.[5]

Under the authority of the Social Security Act, the Commissioner is required to perform a five-step sequential analysis for determining whether an individual is disabled within the meaning of the Social Security Act.[6] If the Commissioner can find that an applicant is "disabled" or "not disabled" at any step, there is no need to proceed further.[7]

At step one, it is determined whether the claimant is currently engaged in substantial gainful activity.[8] At step two, it is determined whether the claimant has either a medically

---

[3] *See* 42 U.S.C. § 405(h).
[4] 42 U.S.C. § 423(d)(1)(A), (2)(A).
[5] *Id.*
[6] *See* 20 C.F.R. § 416.920(a).
[7] *Ukolov v. Barnhart*, 420 F.3d 1002, 1003 (9th Cir. 2005) (quoting *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000)).
[8] 20 C.F.R. § 404.1520(b).

determinable impairment or combination of impairments that when combined is "severe."[9] At step three, it is determined whether the claimant's impairment or combination of impairments is of a severity that meets or medically equals the criteria of one or more specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[10] Before considering step four, the claimant's residual functional capacity ("RFC")—his ability to do physical and mental work activities on a sustained basis despite the limitations from his impairment(s)—is determined.[11] At step four, it is determined whether the claimant has the residual functional capacity to do any work that he has done in the past.[12] Lastly, at step five, it is determined whether the claimant is able to do some other work that exists in "significant numbers" in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience.[13]

Although the Commissioner must assist the claimant in developing a record at each step of the sequential process, the claimant bears the burden of proof during the first four steps while the Commissioner bears the burden of proof at the fifth step.[14]

**B.    Scope of Review**

The Social Security Act allows for unsuccessful applicants to seek judicial review of the Commissioner's final agency decision.[15] The scope of judicial review, however, is limited. The Commissioner's final decision should not be disturbed unless: (1) the ALJ's findings are based on legal error; or (2) the ALJ's determinations are not supported by substantial evidence in the record as a whole.[16] Substantial evidence is "more than a mere scintilla, but may be less than a preponderance."[17] Substantial evidence is "relevant

---

[9] 20 C.F.R. § 404.1520(c).
[10] 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526.
[11] 20 C.F.R. § 404.1520(e).
[12] 20 C.F.R. § 416.920(f).
[13] 20 C.F.R. § 416.920(g); *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).
[14] *Tackett*, 180 F.3d at 1098.
[15] *See* 42 U.S.C. §§ 405(g), 1383(c)(3).
[16] *See Schneider v. Comm'r of Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000).
[17] *Lewis v. Apfel*, 236 F.3d 503, 509 (9th Cir. 2001).

evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion."[18]

In making this determination, the Court must consider the record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.[19] Where the evidence can reasonably be construed to support more than one rational interpretation, the Court must uphold the ALJ's decision.[20] This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts.[21] The Court may not, however, affirm the ALJ's decision "simply by isolating a specific quantum of supporting evidence."[22]

### III. ALJ'S FINDINGS

Utilizing the five-step disability evaluation process,[23] the ALJ rendered an unfavorable decision regarding Plaintiff's application for disability benefits on February 19, 2015. (A.R. 16–24.) At step one of the sequential evaluation process, the ALJ found that Plaintiff "did not engage in substantial gainful activity during the period from his alleged onset date of June 6, 2011 through his date last insured of December 31, 2014." (A.R. 18.)

At step two, the ALJ determined that, through his date last insured, Plaintiff suffered from the severe impairment of depression. (*Id.*) At step three, the ALJ found that the severity of Plaintiff's mental impairment did not meet or medically equal the severity of a listed impairment. (A.R. 18–20.)

---

[18] *Id.*; *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1011 (9th Cir. 2003).
[19] *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001); *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).
[20] *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).
[21] *See Lewis*, 236 F.3d at 509.
[22] *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)).
[23] *See* 20 C.F.R. § 404.1520.

Because the ALJ found Plaintiff's mental impairments do not meet or equal a listed impairment, he assessed Plaintiff's RFC before moving on to step four of the sequential evaluation process. The ALJ determined that, through his date last insured, Plaintiff

> had the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is precluded from work on unprotected heights and dangerous moving machinery; is precluded from sustained, intense interaction with the public, coworkers and supervisors but brief conversations or intermittent conversations are not precluded; and is precluded from detailed or complex problem solving.

(A.R. 20.)

In determining Plaintiff's RFC, the ALJ found that Plaintiff's statements regarding the severity and persistence of his impairments were not entirely credible because Plaintiff reported daily activities that were not consistent with his alleged impairments; he received conservative medical treatment that was relatively effective in improving his symptoms; one doctor found that Plaintiff may be engaging in malingering or misrepresentation; there was evidence that Plaintiff stopped working for reasons unrelated to his impairments when he was having marital problems and in the process of obtaining a divorce; and objective medical evidence did not support his claims. (A.R. 20–22.) The ALJ considered the opinions of Dr. Rachel Ross, Plaintiff's treating physician; Drs. L. Toro and Colette Valette, examining physicians; Drs. B. Hernandez and J. Soto, non-examining physicians; and Dr. H. Marrero.[24] (A.R. 20–23.) The ALJ gave "little weight" to Drs. Ross's and Marrero's opinions, "some weight" to Dr. Valette's opinion, and "some weight" to Drs. Hernandez's and Soto's opinions. (A.R. 22–23.)

At step four, the ALJ determined that Plaintiff, through his date last insured, "was capable of performing past relevant work as a delivery driver. This work did not require the performance of work-related activities precluded by the claimant's residual functional

---

[24] The ALJ noted that although Dr. Marrero indicated that he saw the claimant for several office visits, the treatment notes were not provided. (A.R. 23.)

capacity." (A.R. 23.)

Finally, at step five, the ALJ determined that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from June 6, 2011, the alleged onset date, through December 31, 2014, the date last insured." (A.R. 23.)

## IV. DISCUSSION

Plaintiff challenges only the ALJ's rejection of the opinion of Plaintiff's treating physician, Dr. Rachel Ross. (*See* ECF No. 16-1 at 4–11.) Although Plaintiff acknowledges that the record contains opinions that conflict with Dr. Ross's opinion, Plaintiff argues that the ALJ's rejection of Dr. Ross's opinion is improper for the following three reasons: (1) the existence of one-time examining physician Dr. Valette's contradicting opinion does not warrant rejecting Dr. Ross's opinion (*id.* at 10); (2) the record does not contain significant evidence warranting giving the opinions of non-examining physicians Drs. Hernandez and Soto greater weight than Dr. Ross's opinion (*id.*); and (3) the ALJ failed to articulate legally supported reasons for rejecting Dr. Ross's opinion (*id.*). Based on these arguments, Plaintiff moves for summary judgment on the ground that the ALJ improperly rejected the opinion of Dr. Ross without articulating specific and legitimate reasons supported by substantial evidence in the record. (*Id.* at 11.)

The Commissioner opposes Plaintiff's motion and cross-moves for summary judgment on the ground that the ALJ properly rejected Dr. Ross's opinion. (ECF Nos. 17, 18.) For the reasons explained below, the Court concludes that the ALJ provided a specific and legitimate reason supported by substantial evidence for affording Dr. Ross's opinion little weight.

**A.  Applicable Law**

The Ninth Circuit distinguishes among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither treat nor examine the

claimant (non-examining physicians).[25]  In the instant case, it is undisputed that Dr. Ross is a treating physician, Dr. Valette is an examining physician, and Drs. Hernandez and Soto are non-examining physicians.  (ECF No. 16-1 at 9–10; ECF No. 17-1 at 4–7.)

Generally, the opinions of treating physicians should be given more weight than the opinions of non-treating physicians.[26]  This is because treating physicians typically are employed to cure and they have a greater opportunity to know and observe the patient as an individual.[27]  Although a treating physician's opinion is entitled to deference, the ALJ is not bound by the medical opinion of a treating physician, and he may discount or reject the opinion regardless of whether that opinion is contradicted.[28]  If a treating physician's opinion is not contradicted by another doctor's opinion, an ALJ may only reject it for "clear and convincing reasons."[29]  On the other hand, "[i]f a treating . . . doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."[30]  This is because, even when contradicted, a treating physician's opinion is still owed deference and will often be "entitled to the greatest weight even if it does not meet the test for controlling weight."[31]  An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."[32]  "The ALJ must do more than state conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."[33]

---

[25] *Garrison*, 759 F.3d at 1012 (quoting *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)).
[26] *Id.* (citing *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).
[27] *McAllister v. Sullivan*, 888 F.2d 599, 602 (9th Cir. 1989).
[28] *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).
[29] *Lester*, 81 F.3d at 830 (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).
[30] *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).
[31] *Id.* (quoting *Orn v. Astrue*, 495 F.3d 625, 633 (9th Cir. 2007)).
[32] *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).
[33] *Id.* (quoting *Reddick*, 157 F.3d at 725).

Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.[34] Put differently, an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion.[35]

In the instant case, Plaintiff concedes that the opinion of his treating physician, Dr. Ross, is contradicted by the opinions of examining physician Dr. Valette and non-examining physicians Drs. Hernandez and Soto. (ECF No. 16-1 at 9–10.) Thus, the ALJ was required to provide "specific and legitimate reasons that are supported by substantial evidence"[36] for rejecting Dr. Ross' opinion.

**B.    Analysis**

Plaintiff raises a single issue in his motion for summary judgment: whether the ALJ properly rejected[37] the opinion of Dr. Rachel Ross, Plaintiff's treating psychiatrist. (ECF No. 16-1 at 6.) In support of his motion, Plaintiff asserts that the ALJ "failed to articulate legally supported reasons for rejecting Dr. Ross's opinion." (*Id*. at 10.) In addition, Plaintiff contends that "Dr. Ross provided objective support for her opinion" and the record "does not contain significant evidence warranting giving the non-examining opinions greater weight" than that afforded to Dr. Ross's opinion. (*Id*.)

Respondent, in her cross-motion for summary judgment, argues that the ALJ provided good reasons supported by substantial evidence explaining why he rejected Dr. Ross's opinion. (ECF No. 17-1 at 4.) Respondent argues that, as the ALJ repeatedly explained in his written decision, Dr. Ross's objective mental status exam findings are "far

---

[34] *Id.* (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir. 1996)).
[35] *Id.* at 1012–13 (citing *Nguyen*, 100 F.3d at 1464).
[36] *Id*. at 1012 (quoting *Ryan*, 528 F.3d at 1198).
[37] The Court notes that the ALJ did not reject Dr. Ross's opinion in its entirety but instead afforded it "little weight." (A.R. 22.)

9

more modest" than her "extreme opinion that Plaintiff was unable to meet competitive standards in the overwhelming majority of mental aptitudes needed to perform work activity." (*Id.* at 5–6.)

Dr. Ross treated Plaintiff on multiple occasions between November or December 2013[38] and December 2014.[39] The ALJ notes in his written decision that

> Dr. Ross's mental status examinations frequently showed the claimant was alert and oriented, made good eye contact, had no psychomotor disturbance, normal speech, linear thought process, minimal hallucinations, some paranoid ideation and fair insight and judgment (Exhibits 6F/1, 3, 5, 7, 10, 13). While some notes show and [sic] anxious or depressed mood, others showed no mood deficits (Exhibits 6F/1, 3, 5, 7, 10, 13). The claimant was prescribed and took psychotropic medication and progress notes show that with some adjustments, the medication was relatively effective at improving the claimant's symptoms (Exhibits 6F/1, 2, 5).

(A.R. 21.)

On October 27, 2014, Dr. Ross completed a Mental Impairment Questionnaire that specifically addressed Plaintiff's RFC and ability to work. (A.R. 326.) As summarized by the ALJ, Dr. Ross

> indicated the claimant had paranoid ideations, poor concentration and attention, low energy and distracting auditory hallucinations that make him unable to meet competitive standards for many of the mental abilities and aptitudes needed to do unskilled work, had moderate restriction of activities of daily living, marked difficulties maintaining social functioning, marked difficulties maintaining concentration, persistence or pace and 3 episodes of decompensation, has a residual disease process that had resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would cause the claimant to decompensate, and that his impairments or treatment would cause the claimant to be absent from work more than 4 days per month (Exhibit 7F).

---

[38] Dr. Ross's Mental Impairment Questionnaire states that her initial assessment of Plaintiff occurred on November 6, 2013 (A.R. 326), but her first treatment note is dated December 9, 2013 (A.R. 313).
[39] Dr. Valette's Adult Psychological Evaluation, dated December 17, 2014, notes that Plaintiff is currently being treated by Dr. Ross. (A.R. 334.) But, Dr. Ross's last treatment note is dated July 24, 2014 (A.R. 302), and her October 24, 2017 Mental Impairment Questionnaire states that Dr. Ross's most recent appointment with Plaintiff was on October 14, 2017. (A.R. 326.)

(A.R. 22.) The ALJ gave little weight to Dr. Ross's medical opinion in reaching the conclusion that Plaintiff had the RFC to perform a full range of work at all exertional levels that included brief or intermittent conversations, but was precluded from sustained, intense interaction with the public, coworkers and supervisors. Specifically, he rejected Dr. Ross's opinion on the basis that

> Dr. Ross's own objective mental status exam findings do not support her opinions. Specifically, as discussed above, Dr. Ross frequently found the claimant was alert and oriented, made good eye contact, had no psychomotor disturbance, normal speech and linear thought process, and that his medications were generally effective at improving his symptoms (Exhibits 6F/1, 2, 3, 5, 7, 10, 13). This evidence does not support any marked functional limitations, excessive absences and decompensations and is more consistent with the retained capacity to perform work activity with limited contact with others.

(A.R. 22–23.) The ALJ relied more heavily on the opinions of other examining and non-examining physicians and his determination that Plaintiff's testimony was not entirely credible in reaching his conclusion regarding Plaintiff's RFC. (*See* A.R. 21–23.)

The ALJ provided a specific and legitimate reason for affording Dr. Ross's opinion little weight—Dr. Ross's own mental status exam findings did not support her opinion that Plaintiff was unable to perform any work activity. (A.R. 22.)[40] The ALJ's reason for affording Dr. Ross's opinion little weight is supported by substantial evidence.

The ALJ set out a detailed and thorough summary of the facts and conflicting clinical evidence, stated his interpretation of the evidence, and made findings. (A.R. 22–23.)[41] His decision summarized and analyzed Plaintiff's testimony and all medical opinions. (A.R. 20–24.) In addition to considering evidence supporting a finding of non-disability, the ALJ

---

[40] *See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (stating that a conflict between treating physician's opinion and treatment notes could justify an ALJ's decision to reject treating physician's opinion, but only if supported by substantial evidence).

[41] *See Garrison*, 759 F.3d at 1012 (citing *Reddick*, 157 F.3d at 725) (stating that the substantial evidence requirement is satisfied when the ALJ sets out a detailed and thorough summary of the facts and conflicting clinical evidence, states his interpretation thereof, and makes findings).

also took note of evidence that Plaintiff occasionally felt people were laughing at him (A.R. 19); had an anxious or depressed mood (A.R. 21); had a history of hallucinations (A.R. 22); had a "longstanding" history of depressive and anxiety symptoms that require psychotropic medication management services and restrict Plaintiff to limited contact with the public, coworkers, and supervisors (A.R. 22); his medication was relatively, but not completely, effective with some adjustments (A.R. 21); and that multiple physicians diagnosed Plaintiff with major depression. (A.R. 21.)

In rejecting Dr. Ross's opinion, the ALJ considered the totality of Dr. Ross's treatment notes. Plaintiff argues that the ALJ only cited to Dr. Ross's treatment notes to discount Dr. Ross's opinion. (ECF No. 16-1 at 9.) To the extent that Plaintiff argues that the ALJ only considered the portions of Dr. Ross's treatment notes that conflicted with her opinion, this inaccurately characterizes the ALJ's analysis—the ALJ specifically noted that Dr. Ross's treatment notes indicated Plaintiff sometimes appeared with an anxious or depressed mood and that his treatment required some adjustments and was not completely effective. (A.R. 21.)[42] After considering the entire picture that Dr. Ross's treatment notes painted, the ALJ concluded that Dr. Ross's mental status exam findings did not support her opinion.

As the ALJ specifically noted, Dr. Ross's treatment notes frequently reflected that Plaintiff was alert, oriented, and made good eye contact. (A.R. 302, 304, 306.) During every visit, Dr. Ross found that Plaintiff had normal speech, linear thought processes, and no psychomotor disturbance. (A.R. 302, 304, 306, 308, 311.) Every treatment note also states that Plaintiff's response to medication was "fair" and without side effects (A.R. 305, 307, 308, 311), until the last treatment note, in which Dr. Ross stated that Plaintiff's

---

[42] Plaintiff cites *Holohan v. Massanari*, 246 F.3d 1195 (9th Cir. 2001) to support his argument that the ALJ impermissibly relied on selective portions of Dr. Ross's treatment notes. In *Holohan*, the ALJ cherry-picked quotes from the treating physician's treatment notes to exaggerate the physician's description of plaintiff's improvements and misattributed a statement about the infrequency of plaintiff's panic attacks to the treating physician when this was stated by a different physician. *Id*. at 1205. In contrast, the ALJ in this case considered all of Dr. Ross's treatment notes.

response to medication was "good." (A.R. 303.) Dr. Ross indicated that Plaintiff's audio and visual hallucinations were "minimal" or nonexistent during every visit. (A.R. 302, 304, 306, 308, 311.) In two treatment notes, Dr. Ross indicated that Plaintiff's mood and affect were "good." (A.R. 302, 306.)

The opinions of other doctors corroborate these findings by Dr. Ross. Dr. Toro found that Plaintiff had an appropriate affect; spoke in a normal tone of voice; did not appear guarded, evasive, or suspicious; was oriented as to time, place, and person; was "in good contact with reality and cooperates during interview"; and showed no evidence of disorganization of thought processes. (A.R. 284.) Dr. Valette found that Plaintiff had normal mannerisms; displayed organized thought processes; had normal speech; tested for intact memory; and exhibited no symptoms of psychosis or mood disorder. (A.R. 334–35.) Additionally, Dr. Valette found it "highly likely that there are no mental restrictions with [Plaintiff]" and diagnosed him with rule out malingering. (A.R. 336.)

These findings conflict with Dr. Ross's sweeping opinion that Plaintiff cannot perform any work activity. In the Mental Impairment Questionnaire, Dr. Ross checked that Plaintiff was seriously limited or unable to meet competitive standards for nineteen out twenty possible abilities necessary to perform unskilled, semiskilled, or skilled work. (A.R. 328–29.) As a specific example, Dr. Ross stated that Plaintiff had experienced three episodes of decompensation lasting at least two weeks within a twelve month period. (A.R. 330.) However, none of Dr. Ross's treatment notes or her initial examination of Plaintiff indicate that Plaintiff experienced *any* episodes of decompensation lasting at least two weeks. (*See* A.R. 302–24.) In fact, nothing in the medical record supports this statement. The ALJ specifically found that Plaintiff had suffered no episodes of decompensation of extended duration (A.R. 19), a conclusion not challenged by Plaintiff.

Accordingly, the ALJ provided a specific and legitimate reason supported by substantial evidence for affording Dr. Ross's opinion little weight.

/ / /

/ / /

13

# V. CONCLUSION

For the reasons stated above, the Court concludes that the ALJ's decision to reject Dr. Ross's opinion was not legal error. Accordingly, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment (ECF No. 16) be **DENIED** and the Commissioner's cross-motion to affirm the ALJ's decision (ECF No. 17) be **GRANTED**.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties **no later than January 25, 2018**. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **February 5, 2018**. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.[43]

Dated: January 11, 2018

*/s/ Jill Burkhardt*
Hon. Jill L. Burkhardt
United States Magistrate Judge

---

[43] *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).